IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOHN MEREDITH, | * | |
| Plaintiff, | * | No. 06-451C |
| v. | * | (Judge E. Bruggink) |
| THE UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

* * * * * * * * * * * * *

**PLAINTIFF JOHN MEREDITH'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Plaintiff John Meredith, by his undersigned attorney, submits his Memorandum of Contentions of Fact and Law, as follows:

**INTRODUCTION**

At the relevant times herein, Meredith had two separate positions in two departments of the Veteran's Administration ("VA") hospital in Baltimore, Maryland. During the day, Meredith had a position titled Supervisory Diagnostic Radiologic Technologist ("SDRT"), a GS 9 level. For the SDRT position, Meredith's primary duty is patient care. Meredith also has duties in assigning rooms, making schedules, and some employee issues. During scheduled evenings and weekends, Meredith worked as a CT technologist. There were no supervisory duties with the CT technologist work.

In his SRDT position, Meredith received overtime pay for hours over forty per week. However, for the CT technologist work, which was supposed to be on a standby status, Meredith received only the standby pay for being on standby, and not overtime

pay for time actually working. The government's employee manual designates a mathematical formula for payment of hours actually worked while on standby.

In the years at issue in this action, the standby shifts had turned into regular working shifts in the evenings and weekends. Meredith was required to be on site and work an evening shift on the weekdays he was scheduled.

Meredith is still employed at the VA hospital; however, because of a formal grievance complaining of the excessive hour requirements of the evening and weekend CT scanning work, he no longer performs the evening and weekend standby and overtime.

In this action, Meredith seeks the overtime pay that he was due for the work he performed. The United States claims that he is exempt from overtime for the CT technologist position because it deemed his SRDT position to be exempt as an "executive" under the Fair Labor Standards Act ("FLSA"). The government combines the positions for its exemption analysis. Meredith argues that the positions are separate, and, regardless if combined or not, the primary duty test is not met. Therefore, the government should not be able to avoid paying overtime for overtime night and weekend work on the basis of an executive exemption for work during the day.

## FACTS

## I. FACTS THAT PLAINTIFF EXPECTS TO PROVE AT TRIAL.

### A. MEREDITH'S POSITIONS AT THE VA.

As stated above, Meredith is an employee of the VA hospital in Baltimore, Maryland, and at the times relevant herein, was working the two jobs – supervisory diagnostic radiologic technologist and CT technologist.

The combined positions totaled at least 60 hours per week, and, at times, totaled over eighty hours per week. The CT technologist work became so excessive that there were days in which Meredith started his workday at 7:30 a.m. in his day SDRT position and was at the VA hospital until 4:00 a.m. in the morning performing CT scanning work.

When Meredith voluntarily took on the additional position of standby CT technologist in the 1980s, he was called into the hospital approximately once a week. The position changed and increased over time so that by the years at issue, 2003 through 2005, the VA required that on the days he was scheduled for standby, approximately two weeknights and a weekend day or more, he was required to work at least a 5 p.m. to 9 p.m. shift on the weeknights. That is, as the work of the department increased, and the evening and weekend work in particular increased, the standby position turned into evening shifts and the VA required that Meredith report to the CT department at the end of his radiology position during the day.

The United States concedes that Meredith's CT scanning work, the very work at issue in this action, is nonexempt work.

Meredith was paid a standby pay of 25% of his salary for the CT technologist work. He was required to stay in the area during standby, could not engage in activities such as a dinner at a restaurant and could not engage in weekend activities such as boating, because he would be required to come back into the hospital within a certain number of minutes when paged.

The VA required Meredith to work in this CT position and refused to take him off of this weekend and evening work. Meredith made numerous requests to be released from the requirement of evening and weekend CT scanning work. The VA repeatedly

refused this request, claiming that the work was no longer voluntary, but was required. In 2006, Meredith made informal and formal grievances. A grievance examiner, Cynthia Wiley, investigated the grievance and determined that the overtime required was excessive and was used by the department in lieu of hiring staff evenings and weekends. Dennis Smith, Director, VA Maryland Health Care System, agreed and adopted Wiley's findings and Meredith was no longer required to work the evening and weekend shifts. The VA thereafter hired additional staff for evening and weekend CT technology work.

**B. EXEMPTION CONSIDERATIONS.**

Meredith's evening and weekend work, including the 5:00 p.m. to 9:00 p.m. shift, consisted of only CT scanning work. During all times in the evenings and weekends, Meredith had no supervisory functions, and the United States concedes that the hours spent in CT scanning work consisted of no supervisory or personnel responsibilities and was non-exempt work.

At all relevant times, Meredith's primary duty was patient care. In the time period relevant in this action, Meredith's daytime work, SDRT from 7:30 a.m. to 5:00 p.m., consisted of the following, with estimates of time devoted to the tasks: first line of patient care (initial interview, determination of care needed) – 50%; ensuring staffing and planning staffing needs (incl. scheduling board) – 20%; taking patient x-rays – 10%; quality assurance (looking at and correcting images as a technologist) – 7.5%; making image copies as librarian – 2.5%; meetings (general and including discussions of any complaints by patients, personality conflicts – 2.5%; troubleshooting and resetting machines – 2.5%; other duties as required (including front desk staffing) – 5%. In addition, Meredith had responsibilities in continuing education.

Meredith's SDRT work had a supervisory component for that department, with many levels of management above him. The supervisory component was in setting schedules, rotating employees in the different examination rooms, and reporting issues to upper management. Meredith did not exercise discretion and independent judgment in this organizational work.

In his SDRT position, Meredith did not have "authority" or responsibility to hire, make personnel changes or salary changes or promotion. Meredith did interview potential new technologists, along with others such as Robert Cox, one of the line of management, and Meredith did report whether he believed the person would be an appropriate hire. However, Meredith did not have authority to hire the person.

Generally, Meredith's involvement in personnel issues occurred approximately four times per year. If a matter relating to other radiologic technologists arose, he was requested by Human Resources and Cox to investigate and provide his findings to them. At times, Meredith has been requested by his superiors to contact the employee union about an issue arising with a radiologic technologist. Human Resources would recommend a course of action to Cox, and Meredith did not have the power or authority to recommend or implement a different course of action. Such investigatory action was a small part of the work performed by Meredith at the Veteran's Administration.

Until this year, Plaintiff has received overtime throughout his employment with the VA for hours worked in the SDRT position. Presumably because of this action, the government stopped paying Meredith for overtime in the SDRT position.

### C. GOOD FAITH.

In the event that the United States classified Meredith as an exempt employee, such classification was not reasonable or made in good faith based on the work actually performed by Meredith. It is the United States' burden of proving good faith. The government's designee testified that Meredith was forced to continue to work the CT evening and weekend work, that it was not longer voluntary, because the department was not given funding to hire staff for evenings and weekend. It is the government's failure to properly staff and pay for staff that created the excessive overtime. Therefore, the United States' position on CT overtime is simply an avoidance of paying Meredith and is not in good faith.

## II. PLAINTIFF'S POSITION ON FACTS THAT DEFENDANT IS EXPECTED TO RELY UPON AT TRIAL.

The United States provided very few alleged facts in discovery to support its position that Meredith is an exempt employee. In discovery, the only statements or facts provided in support of the government's claim of exemption was the government's response to an interrogatory, wherein the government stated that "Mr. Meredith makes personnel decisions regarding the diagnostic radiologic technologists he supervises," and Cox's statement during the designee deposition, when, during many objections made by the United States, he stated that the government believes Meredith should not receive overtime because the government classified his SDRT position as an exempt position. This sparse statement came after Cox was asked many times for the facts relating to the government's position on exemption.

Late in discovery, the United States identified its employee, Richard Wright, as an individual with knowledge of the designation of SDRT as an exempt position. The mere designation of the position as exempt is not sufficient evidence in an FLSA action. For example, in *Berg v. Newman* 982 F.2d 500, 503 (Fed. Cir. 1992), the court rejected as insufficient the federal government's evidence consisting of a position description and two conclusory statements.

In the event that the United States at one time classified Meredith as an exempt employee, such status was abandoned or reversed, because at least during the period of time at issue in this action, Meredith received overtime pay for hours over 40 for work during the day in his SDRT position. Moreover, the evening and weekend standby in itself is inconsistent with a classification of exempt.

Here, if the Court finds it appropriate to consider an executive exemption, the federal government cannot meet its burden of demonstrating that the exemption applies.

Meredith will object at trial to the introduction by the United States of any evidence other than presented in discovery.[1]

## ISSUES OF FACT AND LAW TO BE RESOLVED BY THE COURT

### I. ISSSUES OF FACT.

The Court in this phase of the proceeding is to determine whether the executive exemption under the FLSA is a defense to the United States' failure to pay overtime to Meredith, and, if so, if the United States can meet its burden of demonstrating that Meredith is exempt from the overtime provisions of the FLSA.

[1] Meredith does not at this time object to the United States' lists of witnesses and exhibits; however, Meredith reserves the right to object to evidence that is beyond that presented in discovery.

The Court is also to determine here whether the United States can meet its burden of proving that any violation of the FLSA was in good faith.

## II. APPLICABLE LEGAL PRINCIPALS.

### A. THE UNITED STATES HAS THE BURDEN OF PROVING THE EXEMPT STATUS, IF IT IS APPLICABLE.

There is no issue of fact that Meredith did not receive overtime for the CT technologist work. The United States raised as a defense to this action that it was not required to pay overtime to Meredith in his CT scanning position because he was classified as an exempt employee in his SDRT position. Meredith asserts first that the SDRT executive status, if it exists, is irrelevant to the CT scanning position. Meredith also asserts that the SDRT exemption issue is irrelevant because under the government's employee manuals, Meredith, as a standby employee in the CT department, should have been paid overtime under the government's formula for hours actually worked. That is, regardless of the exemption issue, the United States failed to accurately pay Meredith under the government's own standby pay calculations.

If the executive exemption is a proper defense, it is the United States' burden of proving that an allegedly exempt employee meets the criteria for exemption under the FLSA, 29 U.S.C. § 213(a)(1). 5 CFR § 551.202(c); *see also Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97, 94 S.Ct. 2223, 2228-29, 41 (1974); *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832 (6th Cir. 2002); *Murray v. Stuckey's Inc.*, 50 F.3d 564 (8th Cir. 1995). "Each employee is presumed to be FLSA nonexempt unless the employing agency correctly determines that the employee clearly meets one or more of the exemption criteria of this subpart and such supplemental interpretations or instructions issued by OPM." 5 CFR § 551.202. "Exemptions to FLSA are to be

narrowly construed in order to further Congress' goal of providing broad federal employment protection." *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir. 1990) (*citing Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211, 79 S.Ct. 260, 263 (1959)). The United States here not only has the burden of proof, but it must prove that Meredith fits "plainly and unmistakenly within [the exemption's] terms and *spirit*." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456 (1960) (emphasis added). Further "[i]f there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt. 5 CFR § 551.202(d).

This analysis requires "an examination of the day-to-day work of an employee." *Berg*, 982 F.2d at 503. Meredith's day-to-day work shows that he does not "plainly and unmistakenly" fit within the executive exemption.

### B. THE UNITED STATES' EMPLOYEE MANUALS REQUIRE OVERTIME PAYMENT FOR HOURS ACTUALLY WORKED ON STANDBY.

The United States paid to Meredith as part of his bi-weekly pay, standby pay in the amount of twenty-five percent of his regular salary. The VA's employee manuals governing Meredith's employment state that employees in standby who are called into work, are to be paid in accordance with a formula for this overtime work. Meredith was not paid this overtime for his CT scanning work, which amounted to substantial overtime hours.

The evening and weekend CT scanning work was far beyond mere standby. Meredith was required to stay after his day work at 5 p.m. and stay for substantial periods of time. He then was called back in numerous times during the standby shift. He was not truly on standby work, but was working additional shifts and should be compensated

thereby.

The government paid overtime to Meredith for all work in his SDRT position over forty hours per week. Incredibly, although the government paid overtime for the SDRT work, and asserts that the SDRT work is exempt from overtime, the government claims that Meredith is not owed overtime for the excessive amount of hours worked in the CT technologist position, which the government concedes is nonexempt work, because of Meredith's SDRT position.

### C. THE UNITED STATES CANNOT MEET ITS BURDEN OF DEMONSTRATING AN EXEMPT STATUS UNDER THE CODE OF FEDERAL REGULATIONS.

The United States claims that the "executive" exemption applies to the SDRT position, making him ineligible for overtime pay for the CT work. An "executive employee" is defined in 5 CFR § 541.205 as "an employee whose primary duty is management (as defined in §551.104) of a Federal agency or any subdivision thereof (including the lowest recognized organizational unit with a continuing function) and who: (1) customarily and regularly directs the work of two or more other employees . . . ; and (2) has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees, are given *particular weight*. 5 CFR § 551.205 (emphasis added).

The United States concedes that Meredith's standby work, as a CT technologist, is not exempt work. Construing the FLSA provisions narrowly, this concession should be dispositive of this action because the government failed to pay overtime for this specific work.

As to the daytime work as a SDRT, as discussed below, the work does not "plainly and unmistakenly" fall in the executive exemption. This work does not meet the primary duty test, and the supervisory duties he performed during the time at issue are less than fifty percent of his work.

**i. PRIMARY DUTY**

To demonstrate that Meredith is an exempt employee, the United States must prove that Meredith's "primary duty" is the performance of exempt work. "Primary Duty" is defined in the Code of Federal Regulations as "typically [ ] the duty that constitutes the major part (over 50 percent) of an employee's work. A duty constituting less than 50 percent of an employee's work (alternative primary duty) may be credited as the primary duty for exemption purposes provided that duty: (1) Constitutes a substantial, regular part of the work assigned and performed; (2) Is the reason for the existence of the position; and (3) Is clearly exempt work in terms of the basic nature of the work, the frequency with which the employee must exercise *discretion and independent judgment* as discussed in §551.206, and the significance of the decisions made." 5 CFR § 551.104 (emphasis added).[2]

A comparison of hours spent on purported supervisory functions versus actual patient care in the SDRT and CT positions demonstrates that the primary and majority work of Plaintiff was nonsupervisory. As discussed in the Fact Section, Meredith's primary duty, of over fifty percent of his time, was patient care. Meredith's duties

---

[2] Prior to the 2008 amendment, title 5, section 551.205 of the Code of Federal Regulations stated that "the primary duty test is met if the employee (1) has authority to make personnel changes that include, but are not limited to, selecting, removing, advancing in pay, or promoting subordinate employees, or has authority to suggest or recommend such actions with *particular consideration* given to these suggestions and recommendations; and (2) Customarily and regularly exercises *discretion and independent judgment* in such activities as work planning and organization; work assignment, direction, review, and evaluation; and other aspects of management of subordinates, including personnel administration." 5 CFR § 551.205 (2007) (emphasis added).

included patient care, set-up assignment board, cover librarian's role, operate front desk as receptionist, technologist in performing quality control and make corrections, reset machines, find solutions to problems to help flow of work, scheduling, taking direction from management, communications with union, encourage technologists to be up on educational requirements, and encourage safety practices for technologists.

Moreover, as discussed below, Meredith did not possess the authority, in that he has no involvement in hiring, firing, advancement or promotion other than investigatory. Reporting a possible disciplinary problem to Cox or investigating a situation and reporting it to human resources is not making suggestions or recommendations. Meredith was a point person who Cox and other management can go to on issues in the department and who has some duties that the other technologists do not. Meredith does not meet the definition of "executive employee."

**ii. PARTICULAR WEIGHT.**

As set forth above, one of the factors in determining whether the primary duty test is met is if the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees, are given *particular weight*." 5 CFR § 551.205(a)(2) (emphasis added).

As set forth in the Code of Federal Regulations, "[c]riteria to determine whether an employee's suggestions and recommendations are given particular weight by higher-level management include, but are not limited to: whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an

executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. Particular weight does not include consideration of an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have particular weight even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 5 CFR § 551.205(b).

There is no question that in his SDRT position, Meredith did not have authority to make personnel changes. Meredith also did not have authority to suggest or recommend actions, and did not have authority to make such suggestions or recommendations "with particular weight." Meredith may raise employee issues to Cox and the human resources department, who then provided direction on information and investigation. Meredith would then investigate and report his findings. Personnel change decisions were made by Cox and the human resources department. Employee issues arose infrequently, at most, four times per year.

Meredith had no authority or responsibility in selecting or advancing in pay or promoting employees. Those decisions, including the decision of who to interview for positions, were made by the human resources department.

**iii. DISCRETION AND INDEPENDENT JUDGMENT.**

Another factor in determining whether the primary duty test is met is if the employee exercises "discretion and independent judgment. The Code of Federal Regulations states that, "[i]n general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or

making a decision after the various possibilities have been considered." 5 CFR § 551.206.

Meredith's work relating to the other employees of the radiology department was not performed with discretion and independent judgment. He did not conduct personnel administration. His work planning and organization was limited to creating room assignments and a monthly schedule.

In his SDRT position, Meredith created schedules for the six imaging rooms and coordinated patient care, and such routine work was not performed with discretion and independent judgment, but rather, is in accordance with the system in place prior to his employment. The system is to schedule an employee to a room and rotate/cycle the employees through the rooms (floro rooms, operating rooms, general x-ray rooms) so that all employees work in all of the different patient care areas per union requirements.

In this position, Meredith filled out forms created by the United States in evaluating other associates in the department, and such regulated review was not performed with discretion and independent judgment. Meredith did not discipline employees, and his only involvement in discipline was in investigating and conveying the investigation to human resources.

In the SDRT position, Meredith takes direction from supervisors to enact procedures, and has no role in selecting equipment, budgeting, proposing the removal or suspension of technologists in department, or in pay raises or recommendations for pay raises. Meredith's work does not exercise discretion and independent judgment as contemplated by the FLSA.

**D. THE UNITED STATES CANNOT DEMONSTRATE THAT IT IN GOOD FAITH FAILED TO PAY OVERTIME TO MEREDITH.**

An employer who violates the provisions of the FLSA "shall be liable" for liquidated damages. 29 U.S.C. § 216(b). The employer can escape this liability if it shows its actions were "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA, and the district court finds liquidated damages unwarranted. 29 U.S.C. § 260. Good faith is a "subjective requirement, shown if the employer had "an honest intention to ascertain and follow the dictates of the Act.'" *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3rd Civ.1984) (*quoting Marshall v. Brunner,* 668 F.2d 748, 753 (3rd Cir. 1982)). The reasonableness test is an objective one, which "[i]gnorance alone" will not satisfy. *Id.* (*quoting Brunner*, 668 F.2d at 753).

The United States relies on its classification of Meredith's SDRT position as exempt in failing to pay overtime to Meredith in his CT technologist position. The CT technologist position is a non-exempt position, and it was not in good faith not to pay overtime for this position. Moreover, the government's reliance on its classification for the SDRT position, without looking at the work actually performed by Meredith, also was not in good faith. It is particularly not in good faith to fail to pay the excessive evening and weekend overtime when the United States did in fact pay overtime to Meredith for the SDRT position.

In addition, the forced excessive overtime was a measure by the government to avoid hiring additional badly needed staff for the evening and weekend CT work. That is, the VA hospital forced Meredith to work the long hours for budgetary reasons. Thus, the government's actions were not in good faith.

________/s/____________________
Donna M.B. King
Law Office of Donna M.B. King, LLC
309 West Pennsylvania Avenue
Towson, Maryland 21204
(410) 494-1005

*Attorney for Plaintiff John Meredith*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of June 2008, I served the foregoing Plaintiff's Memorandum of Contentions and Facts by electronic mail to Robert Chandler, Esquire, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, 1100 L Street N.W., Washington DC 20530.

.

______________________________
Donna M.B. King