**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JOHN MEREDITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-451C |
| v. | ) | (Judge Bruggink) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Pursuant to Appendix A ¶ 14 to the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits this Memorandum of Contentions of Fact and Law.

**INTRODUCTION**

John Meredith has been a supervisor in the imaging department at the Veterans Affairs (“VA”) hospital in Baltimore, Maryland since 1988. Upon assuming this position, Mr. Meredith was classified as an “exempt” employee for purposes of the Fair Labor Standards Act (“FLSA”). In addition to his ordinary supervisory duties, Mr. Meredith volunteered to assume additional duties as an on-call CT scan technician two evenings a week and on some weekends. In exchange for making himself available for CT call, Mr. Meredith was paid an additional 25% of his base salary.

Initially, the opportunity to earn additional pay from the on-call assignment was seen as a benefit. By 2005, however, Mr. Meredith’s call duties required him to return to the hospital with much greater frequency than he had in the beginning, and Mr. Meredith requested to be removed from call duty. His request was granted after he submitted a formal grievance to hospital administration.

Mr. Meredith contends in this litigation that he was incorrectly categorized as an exempt employee and that he is entitled to overtime pay for the hours he worked in excess of 40 in any particular week, including the time that he spent in the hospital performing CT work. The VA hospital appropriately categorized Mr. Meredith as an exempt employee, however. That Mr. Meredith was appropriately categorized as exempt in the performance of his supervisory duties is clear. From 1988 through the filing of Mr. Meredith's claim, he performed his duties as a supervisor on a day-to-day basis, was paid as a supervisor and no one, including Mr. Meredith, suggested that he was not performing supervisory duties in his supervisory role. Even taking his CT work into account, the overwhelming majority of Mr. Meredith's work consisted of performing executive functions. For these reasons, Mr. Meredith is an exempt employee under the FLSA, and the Government is not liable for the amounts claimed in his complaint.

## STATEMENT OF FACTS

John Meredith was hired by the VA hospital in Baltimore, Maryland, as a GS-7 Radiologic Diagnostic Technologist in 1987, and was promoted to a GS-9 Supervisory Radiologic Diagnostic Technologist ("Supervisory Technologist") approximately one year later. Mr. Meredith has held that position continuously through the commencement of this litigation in December 2005, and currently holds that position today. Upon receiving this promotion, Mr. Meredith was designated as an exempt employee. Notwithstanding his exempt designation, Mr. Meredith was paid time-and-a-half for hours in excess of 40 in a week that he works in his supervisory role. This practice is a matter of VA policy; VA is not required to do this, but is free, of course, to exceed the requirements set forth in the FLSA.

As a Supervisory Technologist, Mr. Meredith oversees the operations of and employees in the Radiologic department. He has primary responsibility to ensure that the department is

adequately staffed and runs efficiently and effectively from 8 a.m. to 4 p.m. every Monday through Friday. In doing so, he directs the work of the approximately 15 to 20 Radiologic Diagnostic Technologists ("technologists") he supervises at any given time. He sets their schedules, distributes their work assignments and generally ensures that his staff is meeting the needs of the patients that are referred to his department.

In addition, Mr. Meredith is substantially involved in, and possesses significant authority with respect to, personnel matters. Mr. Meredith interviews candidates referred by the hospital's human resources department for a position in his department. He recommends candidates for hire. Although his boss, Robert Cox, must approve hiring decisions, Mr. Meredith's recommendation is given considerable weight. Once a candidate is hired, they are trained by a technologist selected by Mr. Meredith, according to a training program designed by Mr. Meredith.

Mr. Meredith has responsibility for ensuring that his department is adequately staffed during the daytime on weekdays. He approves, or disapproves, leave requests from technologists. Mr. Meredith intervenes in and mediates disputes between technologists, and has the authority to send technologists home when necessary to maintain order in his department. He also addresses performance and behavior issues among his subordinates, including representing management in discussions with the technologists' union and imposing discipline when necessary.

Mr. Meredith also has substantial responsibility for the direction of the technologists' work. Each morning he assigns the various technologists to a different posts in his department, thus determining the nature of the work they will be performing on any given day. Mr. Meredith performs this function with an eye toward monitoring the development of each technologists'

skills so that each technologist is able to perform each function in his department. Mr. Meredith also reviews the quality of his subordinates' work. From time to time he reviews images taken by technologists and, if necessary, instructs them to perform another study. He also periodically runs reports in order to appraise the productivity and efficiency of his subordinates, in part, for the purpose of making recommendations regarding step increases, performance awards and other personnel action. Mr. Meredith performs a semi-annual performance evaluation for each of the technologists he supervises. From time to time Mr. Meredith requires individuals, or his entire staff, to perform maintenance on the department's equipment or other tasks required to keep his department operating efficiently. Finally, Mr. Meredith responds to the myriad of issues that arise in his department on any given day, from broken equipment, to unusual patient requests to instructing his staff on new procedures.

In performing the above described activities, Mr. Meredith has virtually complete discretion and freedom to exercise his own judgment. Although Mr. Meredith may have to obtain the approval of Mr. Cox with respect to major personnel decisions, on a day to day basis Mr. Meredith runs his department with a free hand.

At or about the same time as Mr. Meredith was promoted to Supervisory Technologist, his supervisor, Wayne Mazan, asked whether he wanted to be added to the list of technicians performing on-call duty in the CT department. Mr. Mazan told Mr. Meredith that, in exchange for making himself available for call, the hospital would pay him an additional 25% of his base salary. At the time, technicians were called into the hospital to perform CT work infrequently, so the opportunity to be on-call was generally considered to be a benefit to Mr. Meredith. Mr. Meredith agreed to accept on-call duties and continuously received an additional 25% of his base pay until he was removed from on-call duty in February 2006.

While on call, Mr. Meredith was not required to remain at the hospital. He was not in any way restricted in the way he used his time, except that he had to be in a condition to perform his CT work when called. He was, for example, limited in his ability to consume alcohol while on call. In addition, Mr. Meredith was permitted to leave a telephone number with the hospital for the purpose of being contacted in the event his presence in the hospital was required.

Mr. Meredith spent the overwhelming majority of his time in his supervisory role, in which he regularly worked a 40-hour week. Between January 1, 2003 and August 31, 2005, Mr. Meredith averaged approximately 4.25 hours per week performing CT work. When compared to the 40 hours that Mr. Meredith worked in his supervisory role over the same period, Mr. Meredith spent just 9.67% of his work time performing CT work. That is, Mr. Meredith spent at least 90.33% of his time performing exempt work. These percentages hold up over the time period from January 2, 2004 to August 31, 2005, as well. During that time, Mr. Meredith spent 10.10% of his working time in performing CT work and 89.90% of his time performing exempt supervisory work.

**STATEMENT OF THE ISSUES OF FACT AND LAW**
**TO BE RESOLVED BY THE COURT**

The only issue to be resolved during this phase of trial is whether Mr. Meredith's duties were such that he satisfied the executive exemption criteria and, thus, was appropriately characterized as an exempt employee.

We note that the trial has been bifurcated so that only the issue of liability will be decided at this time. Should Mr. Meredith prevail on the issue of liability, the Government will raise a number of issues with respect to the measure of damages to be awarded, if any, and the appropriate limitations period that applies to the calculation of damages.

**DISCUSSION OF THE APPLICABLE LEGAL PRINCIPALS**

The defendant bears the burden to prove that a plaintiff is exempt. 5 CFR § 551.202(c). If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated non-exempt. 5 CFR § 551.202(d). Each employee is presumed to be non-exempt, unless the employee "clearly meets one of the exemption criteria." 5 CFR § 551.202(a). The exemption criteria are to be narrowly construed. 5 CFR § 551.202(b); Arnold v. Ben Kanowski, Inc., 361 U.S. 388 (1960) (adding that general provisions of FLSA are interpreted liberally).

A determination as to whether an employee is exempt must "ultimately rest on the duties actually performed by the employee." 5 CFR § 551.202(i). The determination cannot be made based upon job title, position description, or employee's pay grade. 5 CFR § 551.202(b). Where plaintiffs "'down-play and minimize the importance of [their] position[s], testifying that [they] spent most of [their] time performing routine non-managerial jobs,' [t]he courts have tended to reject such post-hoc efforts to minimize the relative importance of managerial duties." Haines v. Southern Retailers, Inc., 939 F.Supp. 441, 450 (E.D.Va. 1996) (quoting Meyer v. Worsley Companies, 881 F.Supp. 1014, 1020 (E.D.N.C. 1994) (citing Murray v. Stuckey's Inc. 939 F.2d 614, 618 (8th Cir. 1991); Donovan v. Burger King Corp., 672 F.2d 221, 227 (1st Cir. 1982); Horne v. Crown Cent. Petroleum, Inc., 775 F.Supp. 189 (D.S.C. 1991))). See also Harrison v. Preston Trucking Company, Inc, 201 F.Supp. 654, 656 (D.Md. 1962).

An executive employee is a supervisor or manager who manages a Federal agency or any subdivision thereof (including the lowest recognized organizational unit with a continuing function). 5 CFR § 551.205. Management, as used in § 551.205, means performing certain activities including, but not limited to, activities such as interviewing, selecting, and training of

employees; directing the work of employees; maintaining production or financial records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; and apportioning the work among the employees. 5 C.F.R. § 551.104.

Executive employees also must customarily and regularly direct the work of subordinate employees. 5 CFR § 551.205. Customarily and regularly means with a frequency which must be greater than occasional but which may be less than constant. 5 C.F.R. § 551.104. Tasks or work performed customarily and regularly includes work normally and recurrently performed every workweek. Id. It does not include isolated or one-time tasks. Id.

In addition, an executive employee must meet the primary duty test. The primary duty test is met if the employee (1) has authority to make personnel changes that include, but are not limited to, selecting, removing, advancing in pay, or promoting subordinate employees, or has authority to suggest or recommend such actions with particular consideration given to these suggestions and recommendations; and (2) customarily and regularly exercises discretion and independent judgment in such areas as work planning and organization; work assignment, direction, review, and evaluation; and other aspects of management of subordinates, including personnel administration.

An employee's primary duty consists of work that constitutes a major part (over 50 percent) of that employee's work, or a duty consisting of less than 50 percent of an employee's work, if it: (1) constitutes a substantial, regular part of the work assigned and performed, (2) is the reason for the existence of the position and (3) is clearly exempt work in terms of the basic nature of the work, the frequency with which the employee must exercise discretion and

independent judgment and the significance of the decisions made. 5 C.F.R. § 551.104.

In determining whether an employee's recommendations have been given particular consideration, the Court should consider whether it is part of the employee's job to make such suggestions or recommendations, the frequency with which such recommendations are made or requested, and the frequency with which such recommendations are relied upon. 5 CFR § 551.205(b). The court may consider other factors as well. Id. Generally, recommendations must pertain to employees whom the executive customarily and regularly directs. Id. Particular weight does not mean occasional suggestions with regard to the status of a co-worker. Id. An employee's suggestions and recommendations may still be deemed to have particular weight even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status. Id.

In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. 5 C.F.R. § 551.206(a). It implies that the employee has authority to make an independent choice, free from immediate direction or supervision. 5 C.F.R. § 551.206(c). However, an employee can exercise discretion and independent judgment even if the employee's decisions or recommendations are reviewed at a higher level. Id. Thus, the term discretion and independent judgment does not require that decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. Id. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. Id. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and

independent judgment. Id.

In counting hours in order to make a determination as to whether an employee is exempt, an employee is deemed to be on duty, and time spent on standby duty is hours of work if, for work-related reasons, the employee is restricted by official order to a designated post of duty and is assigned to be in a state of readiness to perform work with limitations on the employee's activities so substantial that the employee cannot use the time effectively for his or her own purposes. 5 C.F.R. § 551.431. A finding that an employee's activities are substantially limited may not be based on the fact that an employee is subject to restrictions necessary to ensure that the employee will be able to perform his or her duties and responsibilities, such as restrictions on alcohol consumption or use of certain medications. Id. An employee is not considered restricted for "work-related reasons" if he remains at the post of duty voluntarily. Id. An employee will be considered off duty and time spent in an on-call status is not considered hours of work if (1) the employee is allowed to leave a telephone number or arrange some other means of being contacted, even though the employee is required to remain within a reasonable call-back radius, or (2) the employee is allowed to make arrangements such that any work which may arise during the on-call period will be performed by another person.

**OBJECTIONS**

We object to Meredith's witness list because it fails, as required by Appendix A ¶ 15(a), to identify separately those witnesses Meredith expects to present and those he may call if the need arises.

We object to Meredith's exhibit list because it fails, as required by Appendix A ¶ 16, to identify separately those exhibits that Meredith expects to offer and those that he may offer if the need arises.

We object to the presentation of evidence related to whether the Government's classification of Mr. Meredith was made in good faith. The Court has decided that the trial of this matter will be bifurcated, and, thus, the issue of the Government's liability will be the only issue before the Court in these proceedings; damages are not being considered at this time. The issue of good faith is relevant only to the determination of whether the Government is liable for liquidated damages. 29 U.S.C. § 260; Pl. Mem. 15. Thus, the issue of the Government's good faith is not part of the liability phase of this litigation.

We object to the presentation of evidence related to the grievance initiated by Mr. Meredith because it is not relevant to any of the issues in this case. The only issue raised in Mr. Meredith's grievance is whether, as a matter of hospital policy, he should have been relieved of his on-call CT duties. The grievance investigation did not in any way relate to the nature of Mr. Meredith's duties or whether they satisfy the executive exemption criteria, which is the sole issue to be determined during the liability phase of this litigation. To the extent that Mr. Meredith contends that the grievance investigation is related to the issue of the Government's good faith, it is not relevant for the reasons stated in the immediately preceding paragraph.

We object to Mr. Meredith's identification of Dennis Smith as a witness in this matter.

Mr. Smith is the Director of the VA Maryland Health Care System. Mr. Meredith has identified Mr. Smith as a witness only with respect to matters related to the grievance examination. As discussed above, evidence related to Mr. Meredith's grievance is not relevant to this phase of the trial. Moreover, Mr. Smith had very little to do with the handling of the grievance. Though Mr. Smith's signature appears on the final decision, Mr. Smith relied upon the report prepared by Ms. Wiley and has no first-hand knowledge of the events described in the report. We note that Mr. Meredith did not depose Mr. Smith during discovery in this matter.

We object to Mr. Meredith's identification of Dr. Eliot Siegel as a witness in this matter. Dr. Siegel is the Chief of Imaging for the VA Maryland Health Care System. Mr. Meredith has identified Dr. Siegel as a witness only with respect to matters related to the grievance examination and the imaging department's staffing practices. As discussed above, evidence related to Mr. Meredith's grievance is not relevant to this phase of the trial. Similarly, decisions that management of the imaging department made as to how to ensure that the department was adequately staffed are not relevant to the issue of whether Mr. Meredith's duties were such that he was appropriately characterized as an exempt employee. To the extent that Mr. Meredith contends that evidence of the department's staffing decisions is related to the issue of the Government's good faith, it is not relevant for the reasons stated above. We note that Mr. Meredith did not depose Dr. Siegel in this matter.

We object to Mr. Meredith's identification of Cynthia Wiley as a witness in this matter. Mr. Meredith has identified Ms. Wiley as a witness only with respect to matters related to the grievance examination. As discussed above, evidence related to Mr. Meredith's grievance is not relevant to this phase of the trial.

We object to the admission of items 6 through 16 on Mr. Meredith's exhibit list. Each of

the documents identified pertains to Mr. Meredith's grievance and related matters. As discussed above, evidence related to Mr. Meredith's grievance is not relevant to this phase of the trial.

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Todd M. Hughes
TODD M. HUGHES
Deputy Director

/s/ Robert E. Chandler
ROBERT E. CHANDLER
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit
8th Floor
1100 L. Street, NW
Washington, D.C. 20530
Tel: (202) 514-7300
Fax: (202) 307-0972

June 27, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 27th day of June 2008, a copy of the foregoing "DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Robert E. Chandler